TURNER *v.* STATE.

**4815** 279 S. W. 2d 818

Opinion delivered June 6, 1955.

*Hendrix Rowell* and *William I. Purifoy,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

LEE SEAMSTER, Chief Justice. This is a Petition for Writ of Error Coram Nobis. Petitioner was the appellant in the case of *Turner* v. *State,* 224 Ark. 505, 275 S. W. 2d 24; and our opinion was delivered on January 24, 1955.

The appellant in due time filed a petition for a rehearing in the case and the petition was denied on the 28th day of February, 1955. The appellant now complains of the action of the Circuit Court in this; that before the trial of the case the appellant on May 17th, 1954, filed a motion in the trial court that he be sent to the State Hospital for Nervous Diseases for a mental examination; that the trial court appointed two doctors to examine the appellant and report to the court their findings as to the sanity of the appellant at that time and on April 14th, 1954, the day the deceased was shot. The two doctors examined appellant and found him to be sane on both occasions. A Motion was filed in the trial court by Turner's lawyers asking permission to cross-examine the doctors making the report. Their report does not go to the merits

of the case and was never presented to the jury. The trial court appointed the doctors to examine the appellant as provided by law for the purpose of ascertaining whether the appellant had any symptoms of insanity at that time or at the time of the shooting, so that the court might determine the advisability of sending him to the State Hospital to have a psychiatric examination of the prisoner.

This same question was before the court on appeal. The opinion in this case takes up most of four closely printed pages discussing this very point. The last sentence is as follows: "But no rule of law requires that cross-examination be allowed of the doctors who make the examination in the first instance merely for the purpose of determining whether there are grounds for sending the defendant to the State Hospital for a mental examination." The appellant now complains that the order placed on the record of the trial court would indicate that the appellant or his attorneys selected the two doctors to examine the prisoner—The majority opinion clearly indicates that the two doctors were selected by the trial court and that they examined the prisoner, reported their findings to the court for the court's information, and for its action on appellant's motion to be sent to the State Hospital for a sanity test.

The State has filed a response to the petition herein, and has attached to the response a detailed certified report from the State Hospital, covering the period from March 28th to May 11th, 1955—The report finds that the prisoner is now and was at the time of the shooting and at the time of the trial sane.

The question raised here has been determined by this court on the appeal of the case from the Circuit Court.

The sworn affidavit of Dr. Rowland R. Robins is attached to the petition. He states, in substance that he has been Turner's family doctor for 10 years. Has treated him for peptic ulcer and on a few occasions opiates were required to relieve him from severe pain; that he is emotionally frustrated and quick tempered from the slightest provocation. This behavior pattern suggests that there

must be some psychotic tendencies. The record further reflects that Dr. Robins was in the court room and appellant's attorney offered his testimony at the preliminary hearing when the court had before it the motion to send the prisoner to the State Hospital. The court refused to hear his testimony then, but did call two other doctors of the court's choosing. Dr. Robins was present again at the trial (Tr. P. 544-548). He testified in chambers about the prisoner's condition with reference to his ability to testify at that trial. He had administered medicine to him on the morning of the day he was to testify. Also gave him a nimbutal to make him sleep—The effects of which would be gone in about 3 hours. He thought because the prisoner had not slept the night before that he would be stronger mentally and physically, and his mind would be clearer after a night's sleep. Dr. Robins was not used as a witness before the jury to testify as to the sanity of the appellant and did not question his sanity while testifying in chambers—It was his physical condition in question then, together with the mental dullness that goes with pain and lack of sleep.

In the recent case of *Jenkins* v. *State*, 223 Ark. 245, 265 S. W. 2d 512, we had occasion to consider and discuss the writ of error *coram nobis;* and what was there said applies here:

"We have also held that where there is a suggestion of the present insanity of the accused at the time of his trial, the failure of the trial court to then institute an inquiry into that question must be corrected, if erroneous, by appeal or writ of error and not by writ of error *coram nobis.* *Kelley* v. *State,* 156 Ark. 188, 246 S. W. 4; *Sease* v. *State,* 157 Ark. 217, 247 S. W. 1036."

The appellant had a trial which was affirmed on appeal and a rehearing was denied—all the facts now alleged were set out in the transcript and fully discussed by the court in its opinion in this case. We hold that no error of fact has been shown to exist in this case. The Writ is denied.